72874. THE STATE v. GIANGREGORIO.
(352 SE2d 193)

BANKE, Chief Judge.
The defendant was approached and arrested by a DeKalb County police officer as he and a companion were seated in a car parked at Hartsfield International Airport, which is located in Clayton County. The officer was working at the time as part of a drug task force comprised of detectives drawn from several metro Atlanta jurisdictions and operating under the direction of a federal Drug Enforcement Administration agent.

A search conducted incident to the arrest resulted in the seizure of a baggage claim ticket from the defendant's person. This and other evidence linked him to a suitcase containing more than 200 grams of cocaine, which led, in turn, to his indictment for trafficking in cocaine.

The defendant moved to suppress the items seized from his person during the search on the ground that his underlying arrest was unlawful. While concluding that the arrest was supported by probable

cause, the trial court nonetheless agreed that it was unlawful and granted the motion to suppress, based on a determination that the DeKalb County officer had no legal authority to effect an arrest in Clayton County. The state appeals. *Held*:

The defendant's Fourth Amendment right to be free from unreasonable searches and seizures clearly was not violated merely because his arrest was effected by a DeKalb County law enforcement officer who, though a member of a duly constituted task force lawfully operating in Clayton County, had not been sworn as a Clayton County deputy. It follows that the grant of his motion to suppress was inconsistent with OCGA § 17-5-31, which provides as follows: "No search warrant shall be quashed or evidence suppressed because of technical irregularity not affecting the substantial rights of the accused."

Such cases as *McCalla v. Verdell*, 122 Ga. 801 (50 SE 943) (1905); *Georgia, Fla. &c. R. Co. v. Anderson*, 12 Ga. App. 117 (76 SE 1056) (1912); and *U. S. Motor Co. v. Baughman Auto. Co.*, 16 Ga. App. 783 (86 SE 464) (1915), do not constitute authority for a contrary conclusion, as they involved the validity of service of civil process by one not legally appointed by the court to do so, rather than the legality of a felony arrest effected by a law enforcement officer acting outside the county of his jurisdiction. A felony arrest may, of course, be lawfully effected by a private citizen acting without any official authority whatever, provided it is based on probable cause. See OCGA § 17-4-60. Thus, it would be anomalous to hold that the defendant's constitutional rights were violated merely because his arrest was effected by a law enforcement officer who purported to be acting as such but whose authority was technically defective. Accord *Stephens v. State*, 106 Ga. 116 (2) (32 SE 13) (1898); *Powell v. Fidelity & Deposit Co.*, 45 Ga. App. 88 (3) (163 SE 239) (1931).

*Judgment reversed. McMurray, P. J., Carley and Pope, JJ., concur. Beasley, J., concurs specially. Deen, P. J., Birdsong, P. J., and Sognier J., dissent. Benham, J., concurs in judgment of dissent only.*

BEASLEY, Judge, concurring specially.

I agree that suppression based on Fourth Amendment standards was erroneous, but I reach this conclusion by a different route than that expressed by the majority.

1. DeKalb County Deputy Sheriff Toles would have been acting de jure, if he had been sworn as a special deputy in Clayton County, OCGA § 45-3-7, and fulfilled the other legal requirements such as filing the oath, OCGA § 45-3-8, and executing a bond, OCGA § 15-16-23. But there was no testimonial or documentary evidence to show that he was so deputized, which would have settled the matter.

Yet it was not the burden of the state to prove by extrinsic evi-

dence that he was lawfully authorized to arrest in Clayton County. "The appointment and qualification of (persons) as deputy sheriffs may be shown by proof that they act as such. 'It is not in general necessary to prove the written appointments of public officers. Proof that a person acts as a public officer is, prima facie, sufficient to show that he is such officer.' *Allen v. State*, 21 Ga. 217." *Earl v. State*, 124 Ga. 28, 29 (1) (52 SE 78) (1905). It is a "well settled principle that public officials shall be presumed to have performed their duties and acted in good faith unless clearly proven otherwise. [Cits.]" *Richmond County Hosp. Auth. v. Richmond County*, 255 Ga. 183, 192 (2) (c) (336 SE2d 562) (1985).

Simply because this came up in a motion to suppress hearing, where the burden is on the state to prove the validity of the warrantless search and seizure, does not cast the burden to prove the officer's authority on the state. See OCGA § 17-5-30 (b). In such a hearing, the state's burden is to prove probable cause and exigent circumstances. See *Phillips v. State*, 167 Ga. App. 260 (1.a) (305 SE2d 918) (1983). It was defendant's obligation to prove lack of authority and so overcome the evidentiary presumption which the law supplied. This was the case in *Allen v. State*, supra. There defendant's motion for a directed verdict at trial, on the ground that the arresting officer's authority was not proved, was rejected.

2. Even if defendant had proved that Toles was acting without legal authority, the arrest would have been valid.

It is without dispute that Toles was acting as a deputy sheriff at least de facto when he made the arrest. That being the case, the arrest was legal insofar as its effect on defendant is concerned. OCGA § 45-3-10 provides that "The official acts of an officer shall be valid regardless of his omission to take and file the oath, except in cases where so specially declared."

The doctrine of de facto official authority is one of long standing in Georgia. Its roots are traced in *Hinton v. Lindsay*, 20 Ga. 746, 748 (1856), in which it was said: "We consider the doctrine well settled, upon great principles of public policy, that the acts of an officer *de facto*, whether judicial or ministerial, are valid, so far as the rights of the public or third persons having an interest in such acts are concerned; and that neither the title of such an officer nor the validity of his acts, as such, can be indirectly called in question in a proceeding to which he is not a party." Even the acts of a person holding a commission who is ineligible to hold office are deemed "valid as the acts of an officer de facto." OCGA § 45-2-1.

The fact that the *Hinton* case involved a justice of the peace and not a deputy sheriff gives no pause, for the concept was applied to the acts of a deputy sheriff in *Stephens v. State*, 106 Ga. 116, 118 (2) (32 SE 13) (1898) and in *Powell v. Fidelity & Deposit Co.*, 45 Ga. App. 88

(3) (163 SE 239) (1931). *Powell* also answers the seeming anomaly created by the law which makes the entering upon the deputy's duties without first taking and filing the oath a misdemeanor. OCGA § 45-3-9. Recognizing this problem, the case simply says that the de facto doctrine applies "notwithstanding the deputy, in acting without having been appointed in writing, violates a penal statute." *Stephens* explains the real harmony between the two principles by stating that it is "as between the State and the defendant" that the act is considered lawful. That of course would not prevent the state from prosecuting the officer for the misdemeanor.[1]

DEEN, Presiding Judge, dissenting.

The majority opinion holds that there is nothing unreasonable about an arrest being effectuated by one who has absolutely no authority to make that arrest. Such a proposition, which endorses the equation that two wrongs make a right, is repugnant, and I must respectfully dissent.

Under OCGA § 36-8-5 (1), the county police have "[t]he same power to make arrests and to execute and return criminal warrants and processes in the county of their election or appointment only, as sheriffs have . . ." A sheriff has the right and duty to enforce laws as a " 'conservator of the peace within his county.' " *Elder v. Camp*, 193 Ga. 320, 323 (18 SE2d 622) (1942). A law enforcement officer from one jurisdiction may arrest in another jurisdiction following a "hot pursuit," *Poss v. State*, 167 Ga. App. 86 (305 SE2d 884) (1983), and may assist another officer in making an arrest in a jurisdiction where the second officer is empowered to do so. *Coley v. State*, 135 Ga. App. 810 (219 SE2d 35) (1975). The instant case featured no "hot pursuit," and while the trial court may have been authorized to find that the DeKalb County officer merely assisted the Clayton County officer in effecting the arrest, that finding certainly was not demanded by the evidence. In short, it is clear that the DeKalb County officer was without authority to arrest Giangregorio in Clayton County, and the trial court was correct in suppressing the evidence seized incident to that illegal arrest. *Hill v. State*, 140 Ga. App. 121 (230 SE2d 336) (1976); *Kelly v. State*, 129 Ga. App. 131 (198 SE2d 910) (1973).

The police officer's arrest of Giangregorio in this case cannot correctly be validated by the doctrine of de facto authority. In *Stephens v. State*, 106 Ga. 116 (2) (32 SE 13) (1898) and *Powell v. Fidelity & Deposit*, 45 Ga. App. 88 (3) (163 SE 239) (1931), the official acts of deputies were upheld despite a defective legal appointment, but the crucial fact, and an absolute requirement for the successful invocation

---

[1] As to the wisdom of specially deputizing multi-government squads, see Op. Atty. Gen. 69-473.

of the "de facto" doctrine, is that there was a purported appointment to the office in each case. In other situations, so-called official acts of officers have been held invalid precisely because there had been no appointment to the office, technically deficient or otherwise. See *McCalla v. Verdell*, 122 Ga. 801 (50 SE 943) (1905); *Georgia, Fla. &c. R. Co. v. Anderson*, 12 Ga. App. 117 (76 SE 1056) (1912); *U. S. Motor Co. v. Baughman Auto. Co.*, 16 Ga. App. 783 (86 SE 464) (1915). In the instant case, the arresting officer's authority did not suffer merely from a technical irregularity or defect; there was no purported legal appointment whatsoever in Clayton County.

Any contention that the officer's arrest of Giangregorio could be upheld as a "citizen's arrest" under OCGA § 17-4-60 is spurious. The officer quite clearly was acting as a law enforcement officer during the entire sequence of events. To permit a police officer to become a private citizen whenever he commits an illegal search and seizure, so as to allow use of the fruits of such illegality, emasculates the Fourth Amendment.

In summary, in the instant case there was no dispute that the arresting officer's legal appointment was in DeKalb County and not Clayton County. The arresting officer's act in Clayton County cannot be validated under the doctrine of de facto official acts if that doctrine is applicable, simply because he had not been appointed, defectively or otherwise, to such office in Clayton County. The trial court, accordingly, properly suppressed the evidence seized incident to the illegal arrest. That result may be in part unsavory, but it is necessary. The outlaw may have no boundaries, but the law must prevail by observing limits to how far it stoops to conquer. "[L]aw must be the law even among its friends." *Cotton v. City of Atlanta*, 10 Ga. App. 397, 399 (73 SE 683) (1911).

I would affirm the trial court.

I am authorized to state that Presiding Judge Birdsong and Judge Sognier join in this dissent.

DECIDED DECEMBER 2, 1986 —
REHEARING DENIED DECEMBER 18, 1986 —

*Robert E. Keller, District Attorney, Clifford A. Sticher, Assistant District Attorney*, for appellant.
*Steven E. Lister*, for appellee.